We'll hear argument now in the case of Lester v. Kloth. Mr. Schmeltz. May it please the court, we are here today on review of an opinion in order by the United States District Court for the Western District of Wisconsin denying the defendant's motion for summary judgment based on qualified immunity. The qualified immunity question here is, first, whether a correctional officer violates the Eighth Amendment when she refused to abide by an inmate's request to stop standing behind him in a prison common area because it triggers post-traumatic stress disorder. And secondly, even if the conduct does violate the Eighth Amendment, if such a violation was clearly established in 2014 and 2015 when these incidents allegedly took place. Of course, the Supreme Court, under Pearson, says we can either address both questions or skip right to the clearly established evaluation of the issue. I'm going to start with that here as well. It's the plaintiff's burden to defeat qualified immunity once it's asserted. They can do so by asserting controlling authority that has placed the constitutional question beyond debate. And I submit that was not done in this case by Mr. Leiser. Mr. Leiser refers to cases, as well as the District Court, referred to cases where there was some conduct on behalf of prison guards and prison officials that violated contemporary standards of decency. It was wanton, the wanton infliction of pain. It was extreme. And we know from the Hudson v. McMillan case that that conduct does have to be extreme when we're talking about an Eighth Amendment case based on psychological harm. We can't have just a psych... Why? Well, the Supreme... Why does conduct have to be extreme if you know that it will cause harm? You can think about one of the classic incidents of torture, that is, subjecting somebody to rock music, unending rock music, or showing reruns of Space 1999 or some other horrible TV show. It's not extreme, but it could nonetheless be torturous. Or take another example, swinging a baseball bat is part of the national pastime. You wouldn't call that extreme conduct. But if you know that someone's head is in the way, that conduct could also be described as murder. So why do we look and ask whether something in the abstract is extreme? We have to look at the Supreme Court's instruction, Your Honor, in Hudson v. McMillan that says not every psychological discomfort is going to give rise to a claim. That I understand. Right. Minimal effects. But your question that you want us to say is, the conduct wasn't extreme. So even though on the record as we have it, the officer knew that it would have a very bad effect on the prisoner, that there can't be any liability. And that's equivalent to saying, swinging a baseball bat isn't extreme. So even though I knew the prisoner's head was in the way, there can't be any liability. And that can't possibly be right. Your Honor, I disagree with that classification of the facts here. First, Sergeant Cloth did not know a serious harm would result. We are here on an appeal from a denial of summary judgment, and the record has to be construed in the light most favorable to the plaintiff. And in the light most favorable to the plaintiff, the officer knew what effect his conduct had. That may be wrong, right? Claim may be entirely fantastic on the plaintiff's part, but we have to assume that he knew it and that it had a very serious effect on him. That's why you're driven to argue that unless the conduct was extreme, there can't be liability. But you don't have any response to the baseball bat hypothetical. The district court did not find that there would be serious harm as a result of... The plaintiff asserts this. There is evidence to that effect. That's where we have to stop. That evidence was not presented in summary judgment, Your Honor, at the put up or shut up stage of the litigation. The evidence that was put in and what the district court acknowledged was that Mr. Leiser suffered symptoms that were akin to someone who is hot-tempered, that he would get fidgety, get sweaty, and retreat back to his cell, which he was always able to do. The district court found that there was no substantial risk that Leiser would suffer serious psychological harm. Where's that finding? In the district court's opinion, it's page 11, page 111 of the appendix. So based on that, and that's what differentiates this case from those cases that the courts have said can inflict psychological harm in violation of the Eighth Amendment, the cases that Dobie referenced, such as Burton v. Livingston and Irving v. Dunwire. The question, as I understood it, was whether the defendant knew or whether we have to assume the defendant knew something. Your contention is that now is objectively the plaintiff's... walking away and so on, and that that wasn't serious harm, but you are aware of the Supreme Court's holding in, I think it's Hudson, yeah, Hudson against McMillan, that serious harm is not a component of an Eighth Amendment claim. That's correct, Your Honor, and that's when we get... Trivial harm can't be an Eighth Amendment claim, but serious harm is not enough. Justice Thomas dissented in Hudson, and he was all by himself. We have to take Hudson as the law, too. Correct, and I think cases like Dobie v. Illinois v. Department of Corrections looked at that and found, even though, first of all, it acknowledged that the line between mere harassment and harassment that was cruel and unusual punishment on the Eighth Amendment is a fuzzy line. That's exactly what we talk about when we talk about the application of qualified immunity. Where is the consensus of the law where that line should be drawn? The cases presented by the district court and by the plaintiff here don't make that line any less fuzzy. There's a line of cases talking about strip searches or sexually derogatory comments and gestures. Clearly, those could give rise to an Eighth Amendment claim based on psychological harm. We don't have that here. We have conduct that the district court acknowledged was objectively innocuous. We don't have... That's a bit of an exaggeration, but would you agree that given the limits of our appellate jurisdiction here, we need to assume that Sergeant Cloth was acting out of malice here? We have to assume that she knew that Mr. Leiser's self-report of PTSD, knew that it would be triggered if she stood behind him and continued to do that, Your Honors, yes, that she had continued to do that knowing that that could result. It was more than just a self-report though, right? At the time, Your Honors, it was a self-report and a report from his inmate brother. As early as the summer of... Sometime in 2013. He actually wasn't diagnosed with post-traumatic stress disorder until sometime in the spring of 2015. So that diagnosis didn't actually exist at the time that he self-reported this and requested an accommodation from Sergeant Cloth. I think that's important too. Leiser was in the mental health ward or cell block, is that right? It's a transitional unit. There are inmates that have... There's a variety of inmates there. I know that we have to assume that fact because that's what he proposed in the record, but it actually is a transitional unit for inmates coming out of a segregated confinement and also for inmates that may have some kind of mental health need. What was Sergeant Cloth doing in that location? She was the assigned sergeant at the time. I gather other guards have been able to avoid triggering Mr. Leiser's responses? According to the record and the facts in light of Mr. Leiser, he did request that accommodation of other officers who then accommodated him. But again, the way this case is different from the cases that we have seen that can state a claim under the Eighth Amendment for psychological harm is there is not that... The intentional actions that were either of a sexual nature or humiliating sexually like strip searches, guards making fun of inmates sexually, making them a pariah for their fellow inmates, suggesting that they be attacked. These are the sort of extreme situations where that fuzzy line has been drawn. There's no case law with actions like this, standing behind an inmate. There's no case law that's authoritative where an objectively innocuous action like this triggers a sort of reaction that is psychological harm, but not serious psychological harm like the district court found. The cases pointed out by the district court, again, the timing of them is not... Makes them not authoritative here. They were at the latter part of 2015, which is at the end of this conduct. Like I said, as early as 2013, Sergeant Cloth was asked not to stand behind Mr. Leiser. And then they involve cases that aren't akin to this type of conditions of confinement case. Either they're a deliberate indifference case where you do have to show a serious medical need or they're cases involving undue restraint like the Davis case where the old and frail civil detainee, a sexually violent person detainee, was forced to use the restroom and urinate on himself while officers didn't help him with that and didn't allow him a chance to clean up and laughed at him while this happened. Your point, I think, is, if I got it right, that, all right, we're going to take the facts in the light most favorable to Mr. Leiser. And even accepting him that way, what you have here is a case of probably certainly harassment, but nothing rising to the level of the standard that this court articulated, for example, in Calhoun in 2003, gratuitous infliction of suffering, the intentional infliction of humiliation and pain. So your point is, she may have known about the PTSD, viewing the facts in the light most favorable to the plaintiff, but it just doesn't rise to the level of an Eighth Amendment violation. That's exactly right, Your Honor. It's more akin to what this court decided in the Doby case where we had an officer for absolutely no penological reason hanging a noose from the prison and swatting at it while he looked on to African American inmates. There's absolutely no reason for that. It's harassment. But what the court there said, that the conduct is not extreme enough to constitute cruel and unusual punishment. It's not like those cases like Burton where the guard pointed a gun at an inmate and cocked the trigger and threatened his life, or in Irving where he threatened to kill him repeatedly and put a bounty out on the inmate and encouraged other inmates to attack him and even gave another prisoner a razor to attack him. Those are the kinds of conduct that can give rise to that Eighth Amendment claim where there's psychological harm, but no serious psychological injury. And I think that's the important distinction here. And with the court's permission... That sounds like the dissenting position in Hudson, which said that serious injury was not, is not required when a guard has attacked or otherwise wronged a prisoner. I understand that the dissenting position was a serious one, but we do have to go with the majority. Where does this serious harm standard come from? The serious harm standard comes from the Eighth Amendment objective and prong of the analysis, Your Honor. Let me ask the question a different way. Can you reconcile the position you're taking with what the court held in Hudson? Yes, we can, Your Honor. In Hudson, again, the court held that not every psychological discomfort is going to give rise to that Eighth Amendment claim. If so, we would have a different situation in Dobie. We'd have a different holding in Dobie. Certainly that that kind of harassment was harmful to the African-American inmates there. It wasn't extreme enough, though, to constitute an Eighth Amendment violation. And certainly there isn't case law that would put a reasonable official on notice that that would violate the Constitution. I'd like to reserve the remainder of my time for rebuttal, Your Honors. Thank you. Thank you, Counsel. Ms. Baumann. Good morning, Your Honors, and may it please the Court. Defendant's counsel has attempted to paint a very different picture, wherein Sergeant Closs' conduct is not only objectively innocuous, but penologically legitimate. And that's simply not the record that was before the district court in this case, and it's not the record before this court now. My client, who represented himself pro se in the court below, is a wounded inmate as a result of a brutal childhood attack in which two men approached him from behind, knocked him out, beat and raped him, and left him in a park. Now as an adult, he suffers from traumatic stress when he's confronted with circumstances that sort of parallel this trauma. When people stand behind him, he experiences PTSD attacks. Mr. Leiser submitted competent, admissible evidence, not only from himself, but three other inmates who observed these attacks, and also his medical records. They explained that when he experiences this type of trauma, he relives the event by visual PTSD flashbacks, and he also engages in self-harm by banging his head against the wall. Now the court below held that Leiser supported his claim that Closs exploited this particular vulnerability by repeatedly engaging in precisely the type of behavior that causes him to suffer from these type of PTSD events. In fact, she engaged in this type of behavior every time that she worked the Unit 1A day room shift. Now in their reply briefs, defendants can see that they're now willing to assume for purposes of appeal that Closs knew of Leiser's condition, that she knew her behavior was And in fact, Closs went beyond just this type of conduct. In response to the pleas for her to stop, she would laugh at Leiser when he asked her to cease this type of activity. She would smirk at him, tell him she could do whatever she wanted, and that he would just have to learn to deal with it. And this type of course of conduct occurred for the course of approximately two years. Now eventually... Let me, if I could, raise what concerns me about your theory of the case here. We have a pretty extensive body of law about the division of labor between different groups of correctional staff. And we say that correctional staff like Sergeant Cloth cannot disregard instructions and prescriptions or interfere with medical treatment or instructions from medical staff. But as I understand it, your theory here is that the defendant guard was required to comply with the prisoner's requests as corroborated by other inmates. Is that right? About how she treated him? Well, Your Honor, in this case, we're looking at something a little different here. The Seventh Circuit has clearly established that in response to an inmate's claims that they're in some sort of precarious, harmful, painful situation, they can't simply do nothing. So it's not that Leiser... That arises in the context of pain, et cetera. I understand that. And you have to be able to get an inmate, you're obliged to get an inmate who needs it to medical care. But there also are concerns in a prison context about power and about manipulation. And what troubles me about your theory is that it seems to say that certain things that a prisoner corroborated by a friend or relative can say are sufficient to require guards to do their job in a particular way. Well, Your Honor, at best, this issue represents a genuine dispute of fact in terms of the record because Cloth in her affidavit does not acknowledge any knowledge that he's being seen by medical providers at all. So the notion that she's relying on this competent care being provided by the staff... No medical staff are telling her she has to accommodate his situation. Let me give you another kind of example that comes up a lot more often. One prisoner tells a guard, I've got a back problem. I need to have the... I need the bottom bunk. So you need to move the guy on the bottom bunk and give me the bottom bunk. Guard's not required to do that, is he? No, but there... Well, it depends on the context and the circumstances, Your Honor. So the cases that we've cited in our brief stand for the proposition that guards cannot literally ignore an inmate... In so far as they're responsible for their own conduct, they cannot ignore the pleas of an inmate who's claiming a constitutional violation. In Greeno versus Daly, even these type of non-medical defendants can't simply do nothing in response to an inmate's plea that they're somehow being harmed here. So it's not that Leiser is even asking for an accommodation in this case. It's not a medical need case. He had no other problems with any other guards triggering this type of behavior. Just Sergeant Closs. So there was enough in the record that the district judge properly found that whatever she did here, it just wasn't enough. Whatever she did, it was not enough, and that Leiser had supported his claim that her activity crossed the line in terms of permissible Eighth Amendment conduct. In light of the point that Judge Hamilton is raising with this question, what case or cases do you think put this question beyond debate for someone in Sergeant Closs' situation? Yes, Your Honor. Well, the Supreme Court over three decades ago in Hudson versus Palmer held that it was a violation of the Eighth Amendment to engage in this type of calculated harassment that is unrelated to prison needs. And in the wake of Hudson, this court in cases like Calhoun, Davis versus Wessel, King versus McCarty, Mays versus Springboard, Courtney versus Devor, these are all cases that have found clearly established Eighth Amendment violations by a prison guard taking a legitimate penological tool and weaponizing it in order to harass, demean, and inflict pain upon inmates. With Ms. Schmelzer's observation that all or most of those cases involve facts that if you put them on a spectrum of extreme conduct are just undeniably more extreme than what you have here. Well, I would submit, Your Honor, that as you pointed out or as Judge Hamilton pointed out, these cases are very highly context dependent. And a reaction to a claim of harm such as laughing, smirking, you know, the flippant I can do whatever I want to, you're going to deal with it, and engaging in this type of behavior over a period of years certainly rises to the level of what was suffered by the single incident harm that was the basis of the finding in Calhoun and Davis versus Wessel. Does the record show with respect to the frequency of the conduct? I could not figure that out. You see words like it happened repeatedly. Yes, Your Honor. It happened on a continuous basis. What's the record show, even viewing it in the light most favorable to your client? Your Honor, my client below submitted an affidavit of his former cellmate, Terry Gorups, and at paragraph 8, he testifies in his affidavit that a cloth stood behind Mr. Leeser every time she monitored him in the Unit 188 room. We do not have in the record the frequency with which she was assigned to that particular unit, but we do know this was a particular behavior that she engaged in every time both he and she were in the same place. In fact, once Leeser also submitted before the district court that he would go so far as to skip meals or even just do anything to avoid these types of interactions. Your Honors, I would also submit that the cases that the state relies in defense of its argument that this conduct does not rise to the level of an Eighth Amendment harm just simply are an opposite here. Cases like Dobby, Babcock, and Doe are all at bottom threats of harm cases, and as this court acknowledged in Smith v. Peters, there is a very real and common sense difference between the experience of an actual pain or injury and then being subject to hazards that are merely threatened, on the other hand. I'd also like to address the state's argument that Clough had this purported justification for her conduct, namely the need to circulate around the day room. I just want to be very clear that it is not Leeser's contention that security measures are of the utmost importance in the prison context, but this type of just general blanket reliance to security measures has not been enough in these types of intentional harassment cases. For example, in Calhoun, the court explicitly acknowledged that strip searches have their legitimate place in the prison environment. The same was the case in Davis v. Wessel with hand restraints and the cross-ex monitoring in Courtney v. DeVore. But as the Supreme Court said in Hudson v. Palmer, intentional harassment of even the most hardened of criminals cannot be tolerated in a civilized society, and that's exactly what the record showed happened here. With that, Your Honor, Mr. Leeser rests if there are no further questions, and we respectfully ask that the court affirm the district court in its entirety. Thank you. Thank you, Counsel. Anything further, Ms. Schmeltzer? Yes, Your Honor. Just briefly, when Justice Scutter asked what was the clearly established law that would put a reasonable person or reasonable officer on notice that this kind of violated the Constitution, the first case that came out was Hudson v. Palmer, and clearly that cannot give rise to a clearly established violation here in this psychological harm type case. Palmer was a Fourth Amendment case involving the search of a cell, and the court said in passing that calculated harassment unrelated to prison needs can violate the Eighth Amendment. That's exactly the kind of generalization that the Supreme Court has rejected in the qualified immunity analysis. It has to be more particular to the facts in the case. You don't need a case on point, but it certainly has to be particularized enough. The contours of that right have to be sufficiently defined. We don't have that here. We have stripped search cases. We have cases which sexually humiliate and degrade inmates, but we don't have cases where guards are standing behind an inmate or doing other objectively innocuous types of conduct that they do all the time in a prison situation that causes some harm but not a significant risk of serious psychological harm to an inmate. So with that, I would ask that the court reverse the district court's decision on a finding of qualified immunity. Thank you. Thank you very much, Counsel. The case is taken under advisement.